**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

|   |   |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| **FOR THE USE AND BENEFIT OF** ) | |
| **MCKENNEY'S, INC.** ) | |
| ) | |
| **Plaintiff** ) | |
| v. ) | Case No. _____ |
| ) | |
| **LEEBCOR SERVICES, LLC** ) | |
| ) | |
| <u>Serve</u>: ) | |
| **Registered Agent:** ) | |
| **Susan Childers North, Esq.** ) | |
| **5425 Discovery Park Boulevard** ) | |
| **Suite 200** ) | |
| **Williamsburg VA 23188** ) | |
| ) | |
| **and** ) | |
| ) | |
| **THE CINCINNATI INSURANCE COMPANY** ) | |
| ) | |
| <u>Serve</u>: ) | |
| **Registered Agent:** ) | |
| **Calvin W "Woody" Fowler, Jr.** ) | |
| **Williams Mullen** ) | |
| **200 South 10th Street** ) | |
| **Suite 1600** ) | |
| **Richmond VA 23219** ) | |
| ) | |
| **Defendants.** ) | |

# COMPLAINT

COMES NOW, Plaintiff United States of America, For the Use and Benefit of McKenney's, Inc. (hereinafter "Plaintiff" and/or "McKenney's"), by and through its undersigned counsel, and files this Complaint against Defendants Leebcor Services, LLC (hereinafter "Leebcor") and The

Cincinnati Insurance Company (hereinafter "Cincinnati"). In support thereof, McKenney's states as follows:

## INTRODUCTION

1. This is a civil action brought under the Miller Act, 40 U.S.C. § 3131, the laws of the Commonwealth of Virginia and 28 U.S.C. § 1332 as the parties are diverse in citizenship and the amount in controversy exceeds $75,000. Defendant Leebcor breached its obligations under the parties' contract, damaging Plaintiff McKenney's in an amount no less than $562,884, the precise amount to be proven at trial. Further, by its failure to promptly pay McKenney's for the work performed, Defendant Leebcor breached its payment bond under the Miller Act. Defendant Cincinnati Insurance Company is jointly and severally liable for Leebcor's failure to pay McKenney's for work completed in breach of the parties' contract.

## JURISDICTION, AND VENUE

2. This action arises under 40 U.S.C. § 3131, *et seq.* and the laws of the Commonwealth of Virginia.

3. This Court possesses original jurisdiction over Plaintiff's Miller Act claim by operation of 28 U.S.C. § 1331, and possesses jurisdiction over Plaintiff's state claims by operation of 28 U.S.C. § 1332, diversity of citizenship, as Plaintiff McKenney's is a Georgia corporation, Defendant Leebcor is a Virginia limited liability company, and Defendant Cincinnati Insurance Company is an Ohio corporation; and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Venue is proper under 28 U.S.C. § 1391(b)(3) in the Eastern District of Virginia because both Defendants are subject to personal jurisdiction in the Eastern District of Virginia, Alexandria Division with respect to this action. Moreover, the contract between Leebcor and

McKenney's for the Project provides for venue for all disputes to be the state and federal courts of the Commonwealth of Virginia; therefore, the parties agreed that venue was proper in any court in the Commonwealth of Virginia.

## PARTIES

5. Plaintiff McKenney's Inc. is a duly licensed Georgia Corporation with its principal place of business located in Atlanta, Georgia.

6. Upon information and belief, Defendant Leebcor Services, LLC is a limited liability company duly organized and existing under the laws of the Commonwealth of Virginia. Leebcor has its principal place of business located in Williamsburg, Virginia.

7. Upon information and belief, Defendant Cincinnati Insurance Company is an Ohio corporation with its principal place of business located in Cincinnati, Ohio.

## STATEMENT OF FACTS

8. In 2016, the United States Army Corps of Engineers ("USACE" or "Government") contracted with Leebcor to renovate and upgrade Army barracks located at Fort Benning, Georgia. Leebcor's scope of work included renovation of barracks for housing Army trainees, known as Building 3105, Starship Barracks (the "Project").

9. The Project contained five separate company barracks, denominated as Companies A through E, and a common area called a "Cadre." The barracks are laid out in a star-shaped formation with five separate wings, or companies, with the cadre as the center common area.

10. In order to secure its payment obligations on the Project, and in conformity with the terms of the Miller Act, 40 U.S.C. § 3131, *et seq*., Leebcor obtained Payment Bond No. 1229628 for the Project from Defendant Cincinnati Insurance Company in the penal amount of

$36,800,206.00 (the "Payment Bond"). A copy of the Payment Bond is attached hereto as **Exhibit A**.

11. On or about June 22, 2017, Plaintiff McKenney's entered into a subcontract agreement (the "Contract") with Defendant Leebcor to provide work generally described as plumbing, heating, ventilation and air conditioning services for the Project.

12. Under the terms of the Contract, Leebcor agreed to pay McKenney's $10,163,970 for its detailed scope of work. *See* Contract, attached hereto as **Exhibit B**.

13. The Contract provided that it was to be "governed and construed in accordance with the laws of the state of the Buyer's [Leebcor's] office." *See* Exh. B at 7. It further states that "any action instituted for the enforcement of this Agreement shall be resolved only in the federal or state courts of the state of the aforementioned Buyer's [Leebcor's] office." *Id*. Leebcor's office is located in the Commonwealth of Virginia.

14. The Contract also contained provisions that Leebcor agreed to pay McKenney's for any additional work it required beyond the original scope of the Contract.

15. During the Project, Leebcor expanded McKenney's original scope of work with the addition of nine Change Orders, which increased the total Contract Price to $10,197,409.

16. During the Project, Leebcor also directed McKenney's to perform additional labor and materials for which it has failed and refused to pay.

17. McKenney's and Leebcor agreed to jointly create a Project schedule for McKenney's work. *See* Contract at Art. D.

18. While McKenney's was responsible for working with Leebcor on determining its specific Project schedule, Leebcor developed an overall Project schedule for all its subcontractors and vendors performing various tasks on the Project.

19. During McKenney's discussions with Leebcor regarding the Project schedule, Leebcor determined that work would proceed concurrently on two company barracks at one time, rather than sequentially.

20. McKenney's previously performed seven Starship projects at Fort Benning and three Starship projects at Fort Jackson. Because of this experience, McKenney's warned Leebcor that other local subcontractors could not support a "two company" schedule that other contractors had attempted unsuccessfully on previous Starship projects. McKenney's recommended that Leebcor develop a schedule based upon proceeding with the company barracks sequentially. Leebcor disregarded McKenney's advice and dictated an overall Project schedule that required its subcontractors to perform according to the "two company" schedule.

21. Under the Baseline Project Schedule, the overall Project start date was March 14, 2017 with an overall Project finish date of May 21, 2018.

22. For reasons outside McKenney's control, which Leebcor does not dispute, Leebcor delayed the Project initiation date more than six months, issuing a Revised Baseline Project Schedule that extended the Project start date to September 21, 2017 and the finish date to December 17, 2018.

23. McKenney's incurred additional costs of $102,779 due to this delayed start of the Project and submitted a claim for these costs to Leebcor.

24. Leebcor never paid McKenney's for this initial delay to their work.

25. Following this initial delay, Leebcor adjusted the Revised Baseline Schedule at least fourteen more times, all for reasons beyond McKenney's control and without their fault or negligence.

26. Under the Parties' Contract, McKenney's was contractually entitled to compensation for the impact, delay and disruption due to Leebcor's changes. *See* Contract at Art. D.

27. McKenney's work was to proceed in three phases: Phase I – Rough-In, Phase II – Finishes and Phase III – Closeout. All three phases depended upon Leebcor's timely and effective coordination of the other subcontractors so that their work would be completed on schedule to allow McKenney's to timely and efficiently perform its plumbing, heating, ventilation and air conditioning construction and installation.

28. On or about September 21, 2017, Leebcor's other subcontractors began work on the Project.

29. For Phase I Rough-In work, Leebcor's demolition subcontractor had predecessor work to complete before McKenney's could begin its Phase I work. Leebcor's roofing subcontractor also had predecessor work to finish before McKenney's could complete its Phase I work. Leebcor failed to manage the work to ensure that the demolition and roofing subcontractors maintained the "two-company" schedule that Leebcor established as the overall Project schedule.

30. Due to Leebcor's failure to coordinate, its other subcontractors caused multiple delays to the start of McKenney's Phase I Rough-In work, including, but not limited to, the following examples:

   a. The demolition work for the first barracks on schedule, Company A, was scheduled to finish on October 2, 2017, but had an actual finish date of October 26, 2017.

   b. The predecessor roofing work for Company A was scheduled to finish on November 21, 2017 but had an actual finish date of January 26, 2018.

    c. The demolition work for one of the later barracks, Company C, was scheduled to finish on January 16, 2018, but had an actual finish date of January 25, 2018.

    d. The predecessor roofing work for Company C was scheduled to finish on April 3, 2018 but had an actual finish date of May 31, 2018.

31. Due to Leebcor's breach of its duty of coordination, the subcontractors responsible for predecessor work caused numerous delays and disruption to McKenney's Phase I Rough-In work.

32. Despite the delays caused by Leebcor's inability to manage and coordinate its subcontractors, McKenney's was able to overcome the impact of these delays by resequencing and accelerating its work to finish its key Phase I Rough-In tasks on time.

33. McKenney's was able to meet its own Schedule milestones earlier or as planned, despite Leebcor's predecessor subcontractor work delays. The following milestones are examples of work areas that were finished on time despite McKenney's being delayed by Leebcor:

    a. Rough-In Mechanical Plumbing, Company A, scheduled completion of February 13, 2018, actual completion on February 1, 2018;

    b. Rough-In Plumbing Insulation Tasks, Company A, scheduled completion of February 20, 2018, actual completion on February 17, 2018;

    c. Rough-In Mechanical Plumbing, Company C, scheduled completion of May 15, 2018, actual completion on May 14, 2018; and

    d. Rough-In Plumbing Insulation Tasks, Company C, scheduled completion of May 21, 2018, actual completion on May 17, 2018.

34. Following McKenney's Phase I Rough-In work, Leebcor's other subcontractors were required to complete certain predecessor work on the Project before McKenney's could begin its Phase II – Finishes work or Phase III – Closeout work.

35. Following McKenney's Phase I Rough-In work, Leebcor again failed to manage and coordinate its other subcontractors. They could not maintain the Project schedule established by Leebcor and their work fell behind yet again.

36. Although its Phase II work was scheduled to start in May 2018, because of the delayed predecessor work, McKenney's was not provided access to begin performing its Phase II work until July 2018.

37. McKenney's and Leebcor agreed to a revised schedule for completion of Phase II work by the end of October 2018, but thereafter Leebcor was unable to maintain this schedule and failed to coordinate its subcontractors which further disrupted McKenney's work and workforce.

38. McKenney's Phase II work was further delayed and disrupted because access to its work was limited and turned over in a piecemeal fashion based upon other subcontractor's late and uncoordinated work.

39. In addition to its failure to coordinate, Leebcor also breached its duty to cooperate and not hinder McKenny's performance by refusing to mobilize certain subcontractors to meet the very "two-Company" schedule requirements they had instituted. As an example, Leebcor refused to mobilize its countertop installer, who was already behind the original schedule, to complete predecessor work in Company B and D in order to allow McKenney's to perform its work as planned. As a result, the countertop installation was delayed and McKenney's was unable to set the plumbing fixtures as planned, a requirement of its Phase II work.

40. Thus, McKenney's was required to re-sequence its work, incurring additional costs, because Leebcor breached its duty to cooperate and failed to coordinate and mobilize its other subcontractors and vendors appropriately.

41. Despite these setbacks, McKenney's continued to execute its Phase II work in good faith by mitigating cost impacts, providing proper notices and completing its contractual obligations.

42. After November 18, 2018, Leebcor abandoned its obligation to issue updated Project schedules for the remainder of the Project, which further exacerbated the lack of coordination of the Project.

43. After suffering numerous schedule setbacks because of Leebcor's delays, failure to coordinate its subcontractors and vendors, and failure to cooperate with McKenney's, McKenney's completed its Phase II work.

44. Because of Leebcor's failure to coordinate as the prime contractor and its failure to cooperate with McKenney's during McKenney's Phase II work, McKenney's Phase III work also became delayed, through no fault of McKenney's.

45. The following Leebcor-caused delays are examples of some, but not all, of the delays McKenney's faced due to Leebcor's failures to coordinate its subcontractors and vendors which effected the start of, and duration of, its Phase III work:

   a. Leebcor predecessor roof work had a planned duration of 51 days beginning on April 13, 2018. This roofing work began late on June 21, 2018, and had an actual duration of 108 days, leading to 106 days of delay on the Project and delaying McKenney's Phase III tasks.

b. While the Revised Baseline Schedule established McKenney's commissioning activities would occur before fire alarm testing, Leebcor revised the schedule and required another contractor to perform its fire alarm testing before McKenney's final commissioning. Because of the Leebcor-caused delays, fire alarm testing which was scheduled to last eight days from September 6 through 17, 2018, but did not occur until February 4, 2019, and had a duration of 28 days through March 13, 2019. As a result, McKenney's was unable to begin its third-party commissioning until March 18, 2019, which was out of sequence and contrary to the established plan

46. By failing to fulfill its duties to coordinate all subcontractors and cooperate with McKenney's, Leebcor breached the Contract and is responsible for the additional costs incurred by McKenney's due to delay, disruption and changes to its work.

47. McKenney's completed the majority of its Phase III work through May 21, 2019, however, due to Leebcor's demands, McKenney's was required to perform additional work through October 9, 2019.

48. Leebcor paid McKenney's pursuant to the Contract through November 2018, totaling $9,943,622.

49. McKenney's timely submitted the following invoices to Leebcor:

   a. Invoice No. 1109889, submitted on January 31, 2019 for $159,988

   b. Invoice No. 1111626, submitted on March 29, 2019 for $88,271

   c. Invoice No. 1112807, submitted on May 31, 2019 for $5,528.

50. Leebcor has not paid any of these outstanding invoices. However, Leebcor certified to the Government that it paid McKenney's January 2019 invoice and, in return, it received full

payment of that Invoice in the amount of $159,988 from the Government. Leebcor has failed to pay McKenney's the funds it received from the Government, in violation of the Prompt Payment Act and its certifications regarding the same, as they were advised by the Contracting Officer on January 15, 2020:

> Please be reminded of your obligations under your Federal Contract and the requirement to pay your suppliers and subcontractors upon payment by the Government. Failure to pay for supplies or services of subcontracting may subject you and your bonding company to a lawsuit by the subcontractor. The suit is allowable under the Miller Act in Federal District Court where the contract was executed and being performed.
>
> As to the specified obligations under your contract, you should review FAR Clause 52.232-5 that require you to certify when you make a request for progress payments that (1) payments to subcontractors and suppliers have been made from the proceeds of payment covered by the certification, in accordance with subcontract agreements and the requirements of 31 USC, Chapter 39; and (2) your request for progress payments does not include any amounts which the prime contractor intends to withhold or retain from a subcontractor or supplier in accordance with the terms and conditions of the subcontract.
>
> Please be advised that a false certification may subject you and your company to civil and criminal liability under federal law.

*See* January 15, 2020 Letter, attached hereto as **Exhibit C.**

51. Despite receiving this admonishment from the Government regarding the funds it certified and received, Leebcor refuses to pay those funds to McKenney's.

52. Leebcor has failed to pay McKenney's for the base scope contract work completed on the Project and is withholding a total of $253,787 of the contract balance, which is due and owing under the Contract.

53. On July 12, 2019, McKenney's timely filed a claim with the Cincinnati Insurance Company, Leebcor's Payment Bond Surety, for the remainder of its Contract balance of at least $253,787.

54. On August 16, 2019, McKenney's timely submitted a claim to Leebcor and Cincinnati Insurance Company, requesting payment of the damages incurred due to the various delays and disruptions suffered on the Project through no fault of McKenney's. This claim included the previously claimed $102,779 for late access to the Work site, and $120,848 for the delay costs McKenney's suffered as a result of Leebcor's delays on the Project, totaling at least $220,627.

55. Leebcor and Cincinnati Insurance Company have not paid McKenney's for its delay damages.

56. On September 27, 2019, McKenney's timely filed a claim for $69,445 with Leebcor and Cincinnati Insurance Company for payment of out-of-scope work Leebcor required McKenney's to perform on the Project due to lack of coordination and design errors that were Leebcor's responsibility. This out-of-scope work included, but was not limited to, the following:

   a. Leebcor directed additional cleaning and wrapping of ductwork during delivery and installation;

   b. During demolition, Leebcor removed drain piping that was intended to remain in place; thus, McKenney's was required to add significantly more new piping; and

   c. Leebcor required McKenney's to rework chilled water piping insulation due to Leebcor's design error.

57. Leebcor acknowledged responsibility for some of these issues and the cost associated with them, however, Leebcor has refused to negotiate the change orders with McKenney's or compensate McKenney's for the work it ordered McKenney's to perform. This is an additional breach of Leebcor's duty to pay according to the Contract and cooperate with McKenney's.

58. Leebcor and Cincinnati Insurance Company have not paid McKenney's $69,445 for the additional work Leebcor required McKenney's to complete and that Leebcor is contractually required to pay.

59. On November 15, 2019, McKenney's made a final claim to Leebcor and Cincinnati Insurance Company for $16,025 for additional work that Leebcor required McKenney's to perform through October 2019.

60. Leebcor and Cincinnati Insurance Company have not paid McKenney's for this additional work.

61. McKenney's has attempted numerous times to resolve this dispute with Leebcor, including several attempts to meet with project and executive management, which Leebcor has stymied. Further, Leebcor has raised numerous spurious delays to McKenney's proposed mediation throughout fall 2019 and 2020 prior to the current COVID 19 situation. Now, Leebcor cites the current public health crisis to delay further the mediation process, claiming it prefers an in-person mediation to a proposed videoconference.

62. Leebcor's refusal to mediate the dispute timely is another bad faith tactic designed to injure McKenney's and postpone its overdue payment obligations.

## COUNT I – BREACH OF CONTRACT
### (Leebcor Services, LLC)

63. McKenney's repeats and incorporates by reference the allegations contained within paragraphs 1 through 62 above as if fully set forth herein.

64. Defendant Leebcor owed specific duties to McKenney's under the Contract.

65. Leebcor's obligations and duties under the Contract included paying McKenney's for the work it performed on the Project, the additional work it directed McKenney's to perform

on the Project and the delay and disruption damages McKenney's suffered as a result of Leebcor's conduct.

66. Leebcor's obligations and duties under the Contract further included its duty to coordinate its subcontractors so as not to impede McKenney's work on the Project and its duty to cooperate with McKenney's so that its work was not hindered on the Project.

67. Leebcor breached its obligations under the Contract when it failed to coordinate the Project as the prime contractor and failed to cooperate with McKenney's so that McKenney's could execute its work on the Project as contemplated by the Parties.

68. Leebcor breached its obligations under the Contract when it failed to pay McKenney's for the work it completed under the Contract and at the direction of Leebcor on the Project.

69. McKenney's performed all its obligations under the Contract by performing all work required under the Contract, the nine executed Change Orders and other work demanded by Leebcor.

70. McKenney's has performed all conditions precedent to recovery under the Contract or has been prevented from fulfilling them by Leebcor's breaches of contract, breach of the duty of good faith and fair dealing and breach of the duty of cooperation.

71. McKenney's has been damaged by Leebcor's material breaches of the Contract.

72. As a direct result of Defendant's material breaches, McKenney's is entitled to recover the money duly owed to McKenney's for performing its obligations under the Contract.

WHEREFORE, Plaintiff McKenney's, Inc. respectfully requests that the Court enter judgment in favor of McKenney's, Inc. and against Defendant Leebcor Services, LLC in at least

the amount of $562,884, the precise amount to be proven at trial, plus attorneys' fees, court costs, and any further relief this Court deems just and proper.

### COUNT II – BREACH OF PAYMENT BOND
### 40 U.S.C. § 3131, *et seq.*
### (The Miller Act)
### (The Cincinnati Insurance Company)

73. Plaintiff repeats and incorporates by reference the allegations contained within paragraphs 1 through 72 above as if fully set forth herein.

74. Having furnished labor to the Project for Leebcor for which it has not received payment, McKenney's is within the class of claimants protected under Payment Bond No. 1229628 provided by Cincinnati Insurance Company.

75. As surety on the Payment Bond, Cincinnati Insurance Company is jointly and severally liable with Leebcor to pay McKenney's for its unpaid labor and/or materials furnished in prosecution of the work on the Project in the amount of at least $562,884.

76. Cincinnati's failure to make payment to McKenney's on its claim constitutes breach of the Payment Bond.

77. McKenney's has performed all conditions precedent to recovery on the Payment Bond or has been prevented from fulfilling them by Leebcor's breaches of contract, breach of the duty of good faith and fair dealing and breach of the duty of cooperation.

78. Pursuant to 40 U.S.C. § 3133, McKenney's files this action more than ninety (90) days after the date on which McKenney's last performed labor for the Project, but less than one (1) year from the date that labor and materials were last provided for the Project.

WHEREFORE, McKenney's requests that judgment be entered in its favor and against Defendant Cincinnati Insurance Company, in the amount of at least $562,884, the precise amount

to be proven at trial, plus pre-judgment and post-judgment interest until paid, all costs, fees, and expenses herein expended, and any further relief that the Court deems just and proper.

Dated: May 8, 2020                                       Respectfully submitted,

*[signature: Shelly L. Ewald]*

Shelly L. Ewald
**WATT, TIEDER, HOFFAR & FITZGERALD, LLP**
1765 Greensboro Station Place, Suite 1000
McLean, VA 22102
Telephone: (703) 749-1000
Facsimile: (703)-893-8029
sewald@watttieder.com

*Counsel for McKenney's, Inc.*