UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

UNITED STATES OF AMERICA,
FOR THE USE AND BENEFIT OF
MCKENNEY'S, INC.,

                Plaintiff,

v.                                Civil Action No. 4:20-cv-179

LEEBCOR SERVICES, LLC

and

THE CINCINNATI INSURANCE COMPANY,

                Defendants.

## REPORT AND RECOMMENDATION

This Report considers three partially dispositive motions seeking summary judgment on portions of this construction dispute related to subcontract work to renovate an Army barracks in Georgia. (ECF Nos. 108, 116, 118). Disputes of material fact preclude summary judgment on the grounds variously alleged by the parties. Accordingly, the Report recommends the court deny all three motions.

The claim was originally brought by subcontractor McKenney's, Inc. ("McKenney's") against the general contractor, Leebcor Services, LLC ("Leebcor"), and Leebcor's payment bond surety, The Cincinnati Insurance Company ("Cincinnati"). McKenney's alleged that Leebcor breached its subcontract, and that Cincinnati is

liable under the Miller Act, 40 U.S.C. § 3131, for Leebcor's failure to pay McKenney's outstanding contract balance. See Compl. (ECF No. 1). Leebcor counterclaimed, alleging McKenney's caused substantial delay and seeking resulting damages. Countercl. (ECF No. 51). Following discovery, Cincinnati moved for summary judgment, (ECF No. 118), arguing that the Miller Act's one-year statute of limitations barred all of McKenney's claims against it. Leebcor and McKenney's both moved for partial summary judgment, alleging portions of their respective claims for damages could be resolved as a matter of law under the subcontract language. See McKenney's Mem. Summ. J. (ECF No. 119); Leebcor's Mem. Supp. Summ. J. (ECF No. 117). All three motions were referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(b) of the Federal Rules of Civil Procedure, and the court convened by remote means for oral argument on August 31, 2021.

After reviewing the summary judgment record, I conclude disputes of material fact preclude judgment as a matter of law on any of the claims, and accordingly, recommend the district court DENY all three Motions for Summary Judgment.

I.    **RECOMMENDED FINDINGS OF MATERIAL FACT**

As relevant to the foregoing motions, the following facts find support in the summary judgment record.[1] In 2016, Leebcor and the United States Army Corps of Engineers ("USACE") entered into a contract to renovate and upgrade Army barracks at Fort Benning, Georgia ("the Project"). On June 22, 2017, McKenney's entered into a subcontract with Leebcor for plumbing, HVAC, and direct digital controls ("DDC") systems on the Project. Compl. Ex. B (ECF No. 1-2). The original subcontract price for McKenney's work was $10,163,170. Id. at 1. To conform with the Miller Act, Leebcor obtained a payment bond from Cincinnati for the Project. See Compl. Ex. A (ECF No. 1-1).

The Project was delayed for various reasons that the parties dispute but was eventually completed in 2019. Answer, Ex. A (ECF No. 50-1). The Government paid Leebcor, but McKenney's claims it is due $253,787 on the original subcontract and approved change orders. Compl. ¶ 52. McKenney's also seeks additional compensation for work it was required to perform outside the specifications and for damages caused by some of the delay. In total, McKenney's filed suit for $562,884. Compl. ¶ 1. Leebcor's counterclaim alleged that McKenney's deficient and untimely

---

[1] The facts are recited based on the contentions enumerated in all three pending motions, with disputed facts viewed in the light most favorable to the party resisting summary judgment. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002).

performance resulted in damages "including general conditions damage, home office overhead loss, and subcontractor back charges/damages" totaling $1,661,380.10. Countercl. ¶ 29

### 1. Initial Delay

At the outset, the Project was delayed by 152 days (the "Initial Delay").[2] See Pl.'s Opp'n (ECF No. 123, at 7). On September 29, 2017, the USACE issued a modification proposal for Initial Delay costs. Defs.' Mem. Ex. 3 (ECF No. 117-4, at 3-4). McKenney's provided Leebcor with requested documentation to support McKenney's claims for delay damages related to the Initial Delay. See Defs.' Mem. Ex. 1 (ECF No. 117-2, at 2, 8); Defs.' Mem. Ex. 5 (ECF No. 117-6). As of July 13, 2018, McKenney's claimed $102,779 in costs. Defs.' Mem. Ex. 6 (ECF No. 117-7). McKenney's expert report in this action asserts current Initial Delay costs of $367,005. Pl.'s Opp'n (ECF No. 123, at 8).

On May 26, 2020, the Government issued a Unilateral Contract Modification ("Modification"), which increased the contract duration by 152 days and the contract price by $635,149.50. See Defs.' Mem. Ex. 7 (ECF No. 117-8, at 5). Leebcor asserts that this amount represents 32.68% of its total request for compensation on the Initial Delay, a characterization McKenney's disputes. See

---

[2] Leebcor asserts that the Project was delayed from March 15, 2017, to August 15, 2017. Defs.' Mem. (ECF No. 117, at 7-8). McKenney's disputes this timeline without providing an alternative. See Pl.'s Opp'n (ECF No. 123, at 5).

Pl.'s Opp'n (ECF No. 123, at 8).  As reflected in the record and acknowledged during the hearing on this motion, Leebcor still intends to request a Contracting Officer's Final Decision ("COFD") for these delay costs.  See Pl.'s Opp'n Ex. 4 (ECF No. 123-4). Leebcor has not paid McKenney's either its total alleged Initial Delay costs of $102,779 or its total additional delay costs of $367,005.  See Pl.'s Opp'n (ECF No. 123).

### 2. Ductwork Change Order

Under the subcontract, McKenney's was responsible for "[p]rovid[ing] all labor, materials, equipment and supervision" for contract performance.  Compl. Ex. B (ECF No. 1-2, at 1).  The contract included requirements such as "[p]rotect[ing] stored equipment at the jobsite," "prevent[ing] the accumulation of dust, debris and foreign material," and "[p]rotect[ing] open ducting from construction dust and debris in a manner approved by the Contracting Officer."  Defs.' Mem. (ECF No. 117, at 11-13) (citing subcontract provisions).  Plastic sheeting was not specified.  See id.

On October 24, 2017, a USACE representative raised concerns about accumulated dust and debris in the ductwork awaiting installation.  See Defs.' Mem. Ex. 10 (ECF No. 117-11 at 7). Leebcor later informed McKenney's that "[t]he approved manner for protecting open ducting . . . is to cap both ends of ductwork with plastic sheeting from the time it leaves the fabrication shop to

the time of installation." Id. at 2. Leebcor's Indoor Air Quality Management Plan ("IAQ") also requires that "[a]ll ductwork arriving on site be sealed with plastic sheeting." Defs.' Mem. Ex. 10 (ECF No. 117-11, at 4). McKenney's disputes whether this provision of the IAQ was included in its subcontract. See Pl.'s Opp'n (ECF No. 123, at 11). McKenney's began applying the requested plastic sheeting and requested payment for the additional work through a Change Order Proposal. See Defs.' Mem. Ex. 14 (ECF No. 117-15). The Change Order was not approved. See Compl. ¶ 56.

### 3. Completion of the Work

McKenney's completed its last daily construction report in January 2019. Def.'s Mem. Ex. 3 (ECF No. 119-4, at 2). In April 2019, the USACE completed a "past performance questionnaire" identifying Leebcor as having "completed this project on time." Def.'s Answer Ex. A (ECF 50-1, at 1).

On May 28 and 29, 2019, McKenney's completed owner training. Pl.'s Opp'n Ex. 2 (ECF No. 124-2, at 3). McKenney's trained on subjects such as the operation and proper use of the mechanical, plumbing, and DDC systems. Id. This training appeared on the project schedules. Pl.'s Opp'n Ex. 1 (ECF No. 124-1). It was also listed in an email from Leebcor's Samantha Mallory to McKenney's project manager with the subject line "3105 Starship

Barracks – Closeout." Pl.'s Opp'n Ex. 2A (ECF No. 124-2, at 5-
6).

In addition to training, McKenney's also performed water
quality work up until October 2019. Pl.'s Opp'n (ECF No. 124, at
14). In particular, Leebcor directed McKenney's to "re-test,
clean, and repair" the shower valves. Pl.'s Opp'n Def.'s Mot. J.
Pleadings Ex. 2 (ECF No. 70-2, at 8); see also Def.'s Mem. (ECF
No. 119, at 10). McKenney's completed this work in the fall of
2019, prior to the end users entering the building. Pl.'s Opp'n
Def.'s Mot. J. Pleadings Ex. 2 (ECF No. 70-2, at 9). McKenney's
submitted two change order proposals for this work, but they were
not approved. See Def.'s Mem. Ex. 8 (ECF No. 119-9); Def.'s Mem.
Ex. 9 (ECF No. 119-10); Pl.'s Opp'n (ECF No. 124, at 14).

    4. **Subcontract Offset Dispute**

Among the terms negotiated by the parties, Article 5 of the
subcontract ("Article 5") addressed terms of payment and provided,
in part, as follows:

> Payment on Seller's [McKenney's] invoices will be made
> within 10 days of Buyer's [Leebcor's] receipt of payment
> from Buyer's client when such payment includes payment
> for amounts properly invoiced by Seller. Buyer's
> receipt of payment from Buyer's client is a condition
> precedent to payment from Buyer to Seller. Seller's
> right to payment is contingent upon Buyer's approval and
> acceptance of the work, but payment shall not be evidence
> of Buyer's final acceptance of the Seller's work.
> Payment shall be subject to subsequent adjustment for
> shortage and allowance for articles or services
> rejected. If payment to Buyer from Buyer's client is
> delayed for reason(s) not attributable to Seller, then

the Seller will be paid within 30 days of the date of the approved invoice from Seller.

Seller agrees that payments owed by Buyer for performance hereunder may be offset by amounts equal to what Seller owes Buyer under <u>this Agreement</u>. This provision does not apply (i) where there are contractual and/or regulatory restrictions on offsets or (ii) where payment on amounts owed Buyer is due to a reasonable dispute.

Subcontract Art. 5 (ECF No. 1-2, at 2) (emphasis in original).

This language was modified from a Leebcor form subcontract that originally referred to offset of amounts owed between the parties on <u>other contracts</u>. Leebcor filed a redline version of the original language reflecting changes requested by McKenney's that were eventually accepted and incorporated into the final document. That original language, as modified by McKenney's, read as follows:

Seller agrees that payments owed ~~to~~ <u>by</u> Buyer for performance hereunder may be offset by amounts equal to what Seller owes Buyer under <u>this Agreement</u> ~~any other contract arrangement between Buyer and Seller~~. This provision does not apply (i) where there are contractual and/or regulatory restrictions on offsets or (ii) where payment on amounts owed Buyer is due to a reasonable dispute.

Draft Subcontract (ECF No. 164-1, at 5).

The subcontract also includes other provisions related to timely performance and payment, including Article 12 ("Article 12") which provides:

12. DEFAULT. Time is of the essence in the performance by Seller of the Work. Buyer's right to require strict performance by Seller shall not be affected by any

8

previous waiver, forbearance or course of dealing. If Seller breaches any provision hereof …,Buyer may, in addition to any other rights it may have hereunder or by law without any liability to Seller, (i) terminate all or part of this Agreement by giving Seller written notice and (ii) complete or procure the completion of the performance of the Work at Seller's expense … Seller shall be liable to Buyer for all costs incurred by Buyer in completing or procuring the completion of performance of the Work in excess of the price of the Agreement (whether or not Buyer exercises its option hereunder).

Subcontract Art. 12 (ECF No. 1-2, at 4).

The scope of work also provides that the subcontractor (McKenney's) "agrees to adhere to the [Leebcor] published schedule," and provide sufficient input to ensure compliance with the contract's scheduling requirements. Id. at 13.

When a dispute arose over nonpayment of McKenney's final invoices, Leebcor alleged that McKenney's delay in performing the work – specifically deficiencies affecting the testing and balancing of the mechanical equipment – resulted in a breach. See Def.'s Opp'n (ECF No. 28, at 17). As a result, Leebcor did not pay McKenney's final invoices. See Id.

Thus far, Leebcor has paid McKenney's $9,943,622 pursuant to the subcontract through November 2018. Compl. ¶ 48 (ECF No. 1, at 10). McKenney's submitted additional invoices to Leebcor in the total amount of $253,787, which Leebcor did not pay. ¶ 52 Id. at 11. The unpaid invoices included $220,347.50 plus $33,439 for outstanding change orders. On July 12, 2019, McKenney's filed a claim with Cincinnati for the alleged remaining balance. Id. From

August through November 2019, McKenney's requested additional
payments from Cincinnati, which were not paid. <u>Id.</u> at 12-13.

## II. <u>PROCEDURAL HISTORY</u>

McKenney's filed its Complaint in this action on May 8, 2020.
<u>Id.</u>  The Complaint alleges a breach-of-contract claim against
Leebcor, and a Miller Act claim against Cincinnati.  <u>Id.</u>  As
damages, McKenney's asserted that Cincinnati was "jointly and
severely liable with Leebcor to pay McKenney's for its unpaid labor
and/or materials." <u>Id.</u> at 15.   McKenney's also asserts that
Cincinnati is liable for "certain delay damages."  <u>Id.</u> at 17.
Leebcor counterclaimed for breach of contract, asserting that
McKenney's failed "to provide timely, proper, and complete work in
accordance with the Subcontract." Def.'s Countercl. (ECF No. 51,
at 8).

On April 5, 2021, Cincinnati filed a motion for judgment on
the pleadings, alleging that McKenney's Miller Act claim was barred
by the statute of limitations.   (ECF No. 61).   United States
Magistrate Judge Robert J. Krask recommended denying Cincinnati's
motion. (ECF No. 86).  Judge Krask further noted that Cincinnati
could file a summary judgment motion on this issue if "discovery
reveal[ed] that McKenney's completed work on the Project in April
2019 and work performed through October 2019 was not performed as
part of the original contract." <u>Id.</u> at 12.  The District Judge

10

adopted the Report and Recommendation in full on June 10, 2021. (ECF No. 97).

On June 25, 2021, following discovery, Cincinnati moved for summary judgment. (ECF No. 118). Cincinnati again alleges (1) that Plaintiff's claim is barred by the statute of limitations under the Miller Act; and also (2) that Cincinnati is not liable for McKenney's costs that are not covered by the Miller Act. Def.'s Mem. (ECF No. 119, at 5). McKenney's opposed the motion on July 2, 2021. (ECF No. 124). On July 7, 2021, Cincinnati replied. (ECF No. 134).

Leebcor also moved for partial summary judgment on June 25, 2021. (ECF No. 116). Cincinnati joined in the motion. Id. Leebcor alleges that (1) McKenney's cannot claim damages for the Government-caused Initial Delay because contract language binds McKenney to the Government's decision on compensation for that delay; and (2) protecting the ductwork fell within the original scope of the subcontract, and McKenney's Change Order Proposal for plastic sheeting is not compensable. Defs.' Mem. (ECF No. 117, at 1). McKenney's opposed the motion on July 2, 2021, (ECF No. 123), and Leebcor replied on July 7, 2021, (ECF No. 135).

Finally, McKenney's moved for partial summary judgment on June 25, 2021. (ECF No. 108). McKenney's asserts that the amounts due under the base subcontract and approved change orders must be paid now, as a result of the revised subcontract language in

11

Article 5 prohibiting offset when the sums allegedly offset are subject to a "reasonable dispute."  Leebcor opposed the motion on July 2, 2020, (ECF No. 128), and McKenney's replied, (ECF No. 130). All three motions are ripe to resolve.

### III. <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-24 (1986). "A material fact is one 'that might affect the outcome of the suit under the governing law.'  A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Spriggs v. Diamond Auto Glass</u>, 242 F.3d 179, 183 (4th Cir. 2001) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).

The party seeking summary judgment has the initial burden of informing the court of the basis of its motion and identifying materials in the record it believes demonstrates the absence of a genuine dispute of material fact.  Fed. R. Civ. P. 56(c); <u>Celotex Corp.</u>, 477 U.S. at 322-24.  When the moving party has met its burden to show that the evidence is insufficient to support the nonmoving party's case, the burden shifts to the nonmoving party to present specific facts demonstrating that there is a genuine

issue for trial.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).

In considering a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150 (2000); <u>see Anderson</u>, 477 U.S. at 255. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 249.

## IV. <u>ANALYSIS</u>

After considering the summary judgment record, I find that there are genuine disputes of material fact which preclude relief on all three motions for summary judgment.

### A. <u>Cincinnati's Motion for Summary Judgment</u>

1. **Reasonable jurors could find that the Miller Act's statute of limitations does not bar McKenney's claim because there is a genuine dispute regarding when McKenney's completed the base contract work.**

With regard to Cincinnati's motion (ECF No. 118), the record contains sufficient evidence for a reasonable juror to conclude that McKenney's provided base subcontract work after May 8, 2019, and thus timely filed its Miller Act claim against Cincinnati. Likewise, a reasonable juror could conclude that McKenney's may

recover the damages alleged, and Cincinnati has not met its burden on summary judgment to demonstrate that no material facts remain in dispute on any particular category of damages. The court thus recommends denying Cincinnati's Motion for Summary Judgment.

Cincinnati first claims that McKenney's failed to file its complaint within the statute of limitations and is time-barred. The Miller Act imposes a one-year statute of limitations on all claims. 40 U.S.C. § 3133(b)(4). But the record reflects that McKenney's work after May 8, 2019, during which the company provided owner training and worked on water quality issues, could lead a reasonable juror to conclude that McKenney's last qualifying work was performed sometime after May 8, 2019. I therefore recommend denying Cincinnati's motion on this issue.

a.   **The statute of limitations under the Miller Act.**

Under the Miller Act, subcontractors must bring claims within "one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action." 40 U.S.C. § 3133(b)(4). The critical inquiry is "whether the work was performed and the material supplied as part of the original contract or for the purpose of correcting defects, or making repairs following inspection of the project." United States ex rel. Magna Masonry, Inc. v. R.T. Woodfield, Inc., 709 F.2d 249, 250 (4th Cir. 1983) (quoting United States ex rel. Noland v. Andrews, 406 F.2d 790, 792 (4th Cir. 1969)). Only "labor or

14

materials" covered by the original contract, and not for "[c]orrection or repair," will toll the statute of limitations. United States ex rel. Allsite Contracting, LLC v. Hartford Fire Ins. Co., No. 10cv1068, 2010 WL 5026950, at *3 (E.D. Va. Dec. 3, 2010).

Determining whether a subcontractor's contributions were part of the base contract or were remedial in nature is a fact-intensive inquiry. See Johnson Serv. Co. v. Transamerica Ins. Co., 485 F.2d 164, 173 (5th Cir. 1973) ("[E]ach case must be judged on its own facts and . . . sweeping rules about 'repairs' offer little help in the necessary analysis."). Courts generally use such factors as "the value of the materials, the original contract specifications, the unexpected nature of the work, and the importance of the materials to the operation of the system in which they are used." S. Steel Co. v. United Pac. Ins. Co., 935 F.2d 1201, 1205 (11th Cir. 1991) (quoting United States ex rel. Ga. Elec. Supply Co. v. U.S. Fid. & Guar. Co., 656 F.2d 993, 996 (5th Cir. 1981)). Even work explicitly required under the contract may be remedial based on "the actual nature of the work performed." United States ex rel. Miller Proctor Nickolas, Inc. v. Lumbermens Mut. Cas. Co., No. 07-cv-2599, 2009 WL 962273, at *4 (E.D.N.Y. Mar. 31, 2009) [hereafter Nickolas]. The base contract work includes work on all accepted change orders. AMEC Env't & Infra.,

<u>Inc. v. Structural Assocs., Inc.</u>, No. 13-CV-21, 2014 WL 1379519, at *3 (E.D.N.C. Apr. 8, 2014).

> **b.   There is a genuine dispute of material fact regarding when McKenney's finished work on the Project.**

McKenney's filed its complaint on May 8, 2020. Compl. (ECF No. 1). Because the Miller Act imposes a one-year statute of limitations, McKenney's must have "performed the last of the labor or supplied the last of the material" on or after May 8, 2019. 40 U.S.C. § 3133(b)(1); <u>see also</u> 40 U.S.C. § 3133(b)(4). McKenney's has articulated two items performed after that date which may be classified as labor or materials under the Miller Act: owner training on May 28 and 29, 2019; and water quality work performed up to October 2019. Pl.'s Opp'n (ECF No. 124, at 14). All parties agree that McKenney's performed this work after May 8, 2019. <u>Compare id.</u>, <u>with</u> Def.'s Mem. (ECF No. 119, at 10); <u>see also</u> Def.'s Reply (ECF No. 134, at 5). However, the parties disagree about whether the work constitutes base contract work or remedial work. Given the fact-intensive inquiry necessary for resolution, reasonable jurors could find that McKenney's filed its complaint inside the statute of limitations.

The nature of McKenney's owner training is genuinely disputed. Plaintiff asserts that it "was required for final payment and to comply with contract closeout." Pl.'s Opp'n (ECF No. 124, at 15). Plaintiff's evidence includes testimony that

16

training appeared on the project schedules, Pl.'s Opp'n Ex. 1 (ECF No. 124-1), and a Leebcor email requiring training for closeout, Pl.'s Opp'n Ex. 2A (ECF No. 124-2, at 5-6). Defendant disputes that the subcontract required this training. Def.'s Reply (ECF No. 134, at 3). Defendant's argument might also be construed, by its citation to United States ex rel. Miller Proctor Nickolas, Inc. v. Lumbermens Mut. Cas. Co. ["Nickolas"], as asserting that all training is remedial. Id. at 5-6. But the training in Nickolas was performed almost a year after the contract work was completed. Nickolas, 2009 WL 962273, at *3. In this case, the training occurred on May 28 and 29, 2019, just over a month after the April 2019 date on which Defendant asserts the Project completed. Pl.'s Opp'n Ex. 2 (ECF No. 124-2, at 3); Def.'s Answer Ex. A (ECF No. 50-1).

Defendant is similarly unable to prove that Plaintiff's water quality work was definitively remedial under the Miller Act. The Miller Act excludes "labor and materials for the purpose of correcting defects or making repairs of the original undertaking." U.S. for Use of Erie City Iron Works v. Fullerton Const. Co., 298 F. Supp. 1157, 1158 (D.S.C. 1969). In United States v. Hartford Fire Insurance Co., a collapsed sidewalk repair fell under a warranty provision rather the contract, even when the collapse stemmed from problems with the original design specifications, because "[n]o original subcontract would call for a sidewalk to be

17

built, dug up, and rebuilt." No. 10-cv-1068, 2010 WL 5026950, at *4 (E.D. Va. Dec. 3, 2010).

However, in this case, Cincinnati has not met its burden to show that McKenney's water quality work constituted repairs. Plaintiff asserts that USACE and Leebcor directed the work, and McKenney's did not create the need. Pl.'s Opp'n (ECF No. 124, at 15). McKenney's has indicated that the Project's water problems were caused by "[d]ebris, including rust, sand, and other particulate in the water mains." Pl.'s Opp'n Def.'s Mot. J. Pleadings Ex. 2 (ECF No. 70-2, at 8). Plaintiff performed multiple cleanings throughout the Project, allegedly in anticipation of "intermediate inspections." Id. at 9. McKenney's then completed "yet another final cleaning/debris removal prior to the end user moving into the building throughout the fall of 2019." Id. A reasonable juror could conclude that the Project was incomplete until these cleanings ended. As such, the Court cannot conclude as a matter of law that McKenney's finished the Project before May 8, 2019.

The parties also disagree about whether McKenney's change order requests prove the water quality work was not part of the base subcontract. Courts may calculate the statute of limitations from the date change order requests are accepted. AMEC, 2014 WL 1379519, at *3. However, McKenney's change order requests were denied. Def.'s Mem. Ex. 8 (ECF No. 119-9); Def.'s Mem. Ex. 9 (ECF

No. 119-10); Pl.'s Opp'n (ECF No. 124, at 14).  Cincinnati asserts
that, merely by filing change order requests, McKenney's conceded
the water quality work was outside the base subcontract's scope.
Def.'s Mem.  (ECF No. 119, at 13).  While recognizing that work on
unapproved change orders would not toll the statute of limitations,
I would not extend this reasoning to interpret the existence of
unapproved changes orders as waivers of base contract scope as a
matter of law.  Moreover, the owner training provided in late May
would already render the Miller Act claim timely for purposes of
summary judgment.

       Cincinnati places great weight on the USACE's April 2019 "past
performance questionnaire," through which the Government allegedly
accepted the Project as complete.[3]  See Def.'s Mem. (ECF No. 119,
at 13).  However, even government acceptance does not conclusively
make McKenney's later work remedial.   In United States ex rel.
Noland v. Andrews, the plaintiff's Miller Act claim was not barred
by the statute of limitations when the plaintiff installed missing
valves after the building had already been accepted.  Noland, 406

---

[3] Cincinnati goes one step further and also claims that McKenney's
admitted the Project was completed in a July 12, 2019, claim letter,
which stated that "[f]ull acceptance of the complete and functional
building complex by USACE confirms . . . that all contractual
preconditions for full payment have been satisfied by McKenney's."
Def.'s Mem. (ECF No. 119, at 13) (quoting Def.'s Mot. J. Pleadings (ECF
No. 61-4, at 6)).   However, McKenney's asserts that this statement is
taken out of context, and "disputes that all preconditions for full
payment . . . occurred prior to April 25, 2019."  Pl.'s Opp'n (ECF No.
124, at 8).

F.2d at 792. The court held that "the fact that the valves were called for by both the primary contract and the subcontract . . . is dispositive of the issue, notwithstanding the Government's acceptance of the premises at an earlier date." Id. Thus, although relevant for a factfinder, the USACE questionnaire is insufficient to establish date of completion as a matter of law.

Moreover, Cincinnati has made this argument before. In response to Cincinnati's motion for judgment on the pleadings, Judge Krask recommended denying Cincinnati's motion because "a genuine issue of material fact remains as to when McKenney's completed work on the Project." (ECF No. 86, at 12). Judge Krask noted that Cincinnati's evidence "do[es] not conclusively establish when McKenney's last performed work on the Project as part of the original contract." Id. at 9. After discovery, Cincinnati has not provided sufficient new evidence to justify a different conclusion. See Def.'s Mem. (ECF No. 119).

Lastly, Plaintiff is "entitled to a liberal construction and application" of the requirements of the Miller Act. Clark-Fontana, 397 F.2d at 10 (internal quotations omitted). Granting this motion would permit Cincinnati to avoid potential liability for McKenney's work on the Project. In light of the material disputes of fact outlined above, as well as the purposes of the Miller Act, a reasonable juror could conclude that the "work provided for in [the] contract" included items completed after May 8, 2019. 40

U.S.C. § 3133(b)(1).  This Report therefore recommends the Court
deny Cincinnati's motion on summary judgment on the statute of
limitations.

      **2.  Reasonable jurors could conclude that McKenney's is
            entitled to the damages it asserts.**

      Cincinnati next contends that it is entitled to partial
summary judgment on certain "categories of damages" that Defendant
asserts are outside the Miller Act.  Def.'s Reply (ECF No. 134, at
7).  The Miller Act allows damages only on "labor or material."
40 U.S.C. § 3133(b)(1).  After reviewing the record, the Court
finds that Cincinnati has not identified specific components of
McKenney's damages that are conclusively outside the Miller Act.
This Report therefore recommends denying Cincinnati's motion on
this issue.

      The Miller Act allows contractors to sue on a payment bond
when they "furnish[] labor or material in carrying out work
provided for in a contract."  40 U.S.C. § 3133(b)(1).  Damages are
not unlimited; contractors may only seek reimbursement for "labor
or material" used on the project.  Id.  Generally, contractors can
recover out-of-pocket costs caused by delays, but not lost profits.
See <u>United States ex rel. Mariana v. Piracci Constr. Co.</u>, 405 F.
Supp. 904, 906-07 (D.D.C. 1975) [hereinafter <u>Mariana</u>].  However,
courts ultimately place the risk of nonpayment on the surety, not
on the subcontractor.  <u>Id.</u> at 905 n.2 (citation omitted).

Under the Miller Act, "material" means "things which will be incorporated in the project itself, such as steel beams, brick, window frames, flooring and roofing" as well as "other things reasonably expected to be consumed, or substantially consumed, in the performance of the work." United States ex rel. Sunbelt Pipe Corp. v. United States Fid. & Guar. Co., 785 F.2d 468, 470 (4th Cir. 1986). "Labor" is "physical toil or manual work." United States ex rel. Am. Civ. Constr., LLC v. Hirani Eng'g & Land Surveying, P.C., 345 F. Supp. 3d 11, 50 (D.D.C. 2018) (quoting United States ex rel. Constructors, Inc. v. Gulf Ins. Co., 313 F. Supp. 2d 593, 597 (E.D. Va. 2004)).

> **a.    There is a genuine dispute of material fact regarding which damages McKenney's may recover under the Miller Act.**

Cincinnati and McKenney's do not dispute that the Miller Act only entitles McKenney's to out-of-pocket costs as opposed to lost profits. Compare Def.'s Mem. (ECF No. 119, at 15), with Pl.'s Opp'n (ECF No. 124, at 19). However, the parties disagree about what portion of McKenney's claims is recoverable. Cincinnati argues generally that "damages far beyond labor or materials . . . are embedded in all of McKenney's claims." Def.'s Mem. (ECF No. 119, at 16) (citation omitted). Whereas McKenney's asserts that all "additional expenses . . . caused by the delays in construction . . . would be covered by the Miller Act payment bond and recoverable from [Cincinnati] to the extent of that bond." Pl.'s

Opp'n (ECF No. 124, at 17).  Because Cincinnati has failed to identify McKenney's allegedly unrecoverable damages with sufficient particularity, the Court has no basis on which to award partial summary judgment on this claim.

As the moving party, Cincinnati bears the burden of proving to the court that there is no genuine dispute of material fact, including informing the court of the basis for its motion.  See Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 322-24.  Despite this well-established standard and its role as the moving party, Cincinnati asserts that it does not bear the burden of "disarticulate[ing] McKenney's improper damages calculations." Def.'s Reply (ECF No. 134, at 7).  Under Federal Rule of Civil Procedure 56, the Court cannot resolve a dispute of material fact if there is not a specific dispute to resolve.  The movant must establish facts by "citing to particular parts of materials in the records . . . [and] showing that the materials cited do not establish the absence or presence of a genuine dispute."  Fed. R. Civ. P. 56.  As such, Cincinnati's reluctance or inability to "disarticulate" McKenney's damages renders its request for entry of partial judgment deficient, and invites nothing more than an impermissible advisory opinion.  See U.S. Const., Art. III, § 2.

Even if the court accepts Cincinnati's general assertions that certain "categories of [McKenney's] damages . . . are unavailable under the Miller Act," McKenney's has established

facts on which a reasonable juror could find that McKenney's can recover under the Miller Act. Def.'s Reply (ECF No. 134, at 7). McKenney's identifies Pay Requisitions numbers nineteen, twenty, and twenty-one as containing "the costs of labor and material for work actually performed by McKenney's as well as amounts allowed by its contract with Leebcor for overhead and profit." Pl.'s Opp'n (ECF No. 124, at 18). McKenney's also identifies "two extended performance claims [that] include material and labor escalation costs, additional labor premium time and additional overhead relating to these delays." Id. at 18-19. Although Cincinnati claims that some of these damages are unrecoverable "indirect expenses," it has not identified (or even speculated about) the amounts. Def.'s Reply (ECF No. 134, at 9). At least some of McKenney's alleged damages in all these applications would be covered labor and materials by the Miller Act. As such, there are sufficient facts to indicate a genuine dispute. And, as already noted, McKenney's is entitled to a liberal construction of the Miller Act. See Clark-Fontana, 397 F.2d at 10. As the surety, Cincinnati bears the ultimate risk of nonpayment, not McKenney's as the subcontractor. See Mariana, 405 F. Supp. at 905 n.2 (citation omitted).

B.   **Leebcor's Motion for Partial Summary Judgment**

    1.   **Reasonable jurors could conclude that McKenney's may claim damages from the initial period of delay and recover for extra work associated with the ductwork.**

With regard to Leebcor's Motion for Partial Summary Judgment (ECF No. 116), in which Cincinnati joined, I also find that there are genuine disputes of material fact in the record that preclude granting Leebcor's motion on either claim.   A reasonable juror could conclude that McKenney's is not bound by the Government's decision to approve only part of the Initial Delay damages because Leebcor can still appeal the Modification under the CDA. Sufficient evidence would also allow a reasonable juror to conclude that protecting the ductwork fell outside the original subcontract scope and is therefore compensable additional work.   This Report thus recommends denying Leebcor's Motion for Partial Summary Judgment.

        a.   **Reasonable jurors could find that McKenney's is not bound by the modification because it is not a final decision, binding upon Leebcor.**

Leebcor first contends that "McKenney's is bound by the Government's decision to cover only a small portion of the asserted costs for the Initial Delay." Defs.' Mem. (ECF No. 117, at 16). Article 14 of the contract ("Article 14") states the following:

> If a decision relating to the Prime Contract is made by [the Army Corps] and such decision is also related to this Agreement, said decision, if binding upon [Leebcor] under the Prime Contract, shall in turn be binding upon [McKenney's] with respect to such matter if [McKenney's]

> is allowed to provide any required or supporting
> documentation in the basis of Owner's decision.

Subcontract Art. 14 (ECF No. 1-2, at 5).  Plaintiff agrees that
all final decisions binding Leebcor similarly bind McKenney's,
arguing instead that the Modification is not a binding decision.
See Pl.'s Opp'n (ECF No. 123, at 18).  Because Leebcor has neither
agreed with the Government's decision, nor appealed it, the court
should deny Leebcor's motion on this issue.

   As McKenney's observes, the entire text of subcontract
Article 14 includes the following caveat:

> If Buyer elects to appeal any such decision of Buyer's
> Client, Buyer agrees to promptly furnish Seller with a
> copy of such appeal.  Any decision upon appeal of such
> matter, if binding upon Buyer, shall in turn be binding
> upon Seller.

Subcontract Art. 14 (ECF No. 1-2, at 5).  To appeal the
government's decision under the CDA, the contractor must request
a COFD "within 6 years after the accrual of the claim." 41 U.S.C.
§ 7103(a).  The contractor can then appeal within ninety days to
an agency board, id. § 7104(a), or within twelve months to the
United States Court of Federal Claims, id. § 7104(b).  Leebcor's
outstanding appeal opportunities could reasonably render the
Modification non-binding under Article 14.  Leebcor could accept
the Government's decision and waive its appellate rights but it
has not done so.  As reflected in the record and acknowledged
during the oral hearing on this motion, Leebcor has considered

requesting a COFD for additional delay costs.  See Pl.'s Opp'n Ex. 4 (ECF No. 123-4).  As a result, Leebcor could receive additional compensation, a portion of which may be owed to McKenney's. Therefore, a reasonable juror could find that the Modification approved – but not yet accepted by McKenney's and subject to review – is not binding on either party.

If Leebcor does not appeal the Modification, Defendants correctly state that the Modification will eventually bind McKenney's.  See Defs.' Reply (ECF No. 135, at 3).  However, the Modification occurred on May 26, 2020, see Defs.' Mem. Ex. 7 (ECF No. 117-8, at 3), allowing Leebcor to appeal until May 26, 2026, see 41 U.S.C. § 7103(a).  At this stage, summary judgment requires Leebcor to show that McKenney's is currently precluded from recovering, not that it may be at some point in the future.  See Fed. R. Civ. P. 56.[4]

Leebcor also argues that McKenney's provided supporting documentation for the Modification, as required under Article 14. See Defs.' Mem.  (ECF No. 117, at 18).  But McKenney's disputes Defendants' characterization of materials provided as a request for equitable adjustment.  See Pl.'s Opp'n (ECF No. 123, at 5-6). In addition, Leebcor's characterization of the Government's

---

[4] As Leebcor notes, the consequences of this uncertainty may eventually fall on McKenney as it has the burden of proof at trial to prove its damages have accrued and are recoverable.  See Defs.' Reply (ECF No. 135, at 4).

decision as approving only an across-the-board percentage of its total request for compensation is disputed.  The Government's approval did represent a portion of the total costs submitted, but the record on summary judgment does not establish as a matter of law that its decision treated each subcontractor's request for adjustment the same.  Because there are material disputes of fact regarding whether the Modification is binding, it is unnecessary to discuss the sufficiency of McKenney's documentation under Article 14, or the conditions of the Government's partial approval. See Subcontract Art. 14 (ECF No. 1-2, at 5).  In light of the material factual disputes outlined above, Leebcor has not met its burden and the court should deny summary judgment.[5]

> **b.   Reasonable jurors could conclude that protecting the ductwork falls outside the original scope of the contract.**

Leebcor next contends that protecting the ductwork with plastic "was explicitly part of McKenney's scope of work" under the subcontract, and thus McKenney's claim for the extra work on the ducts should be denied as a matter of law.  Defs.' Mem. (ECF No. 117, at 19).  McKenney's asserts that the requirement for plastic sheeting was never incorporated into the subcontract and

---

[5] Leebcor also moved for summary judgement on Cincinnati's behalf, arguing that "[i]f Leebcor has no payment obligation, . . . then Cincinnati cannot be held responsible as surety" under the Miller Act.  Defs.' Reply (ECF No. 135, at 7). Because material disputes of fact preclude summary judgment in Leebcor's favor, the court should also deny summary judgment to Cincinnati on this claim.

thus "is not applicable to McKenney's work." Pl.'s Opp'n (ECF No. 123, at 20). "The threshold question for a court asked to grant summary judgment based on the interpretation of a contract is whether the contract is ambiguous." Baker v. Baker, 793 Fed. App'x 181, 184 (4th Cir. 2019) (citing Covol Fuels No. 4, LLC v. Pinnacle Mining Co., LLC, 785 F.3d 104, 111 (4th Cir. 2015)). Because Leebcor and McKenney's have both submitted evidence supporting either contract interpretation, the court should deny Leebcor's motion on this issue.

Although the contract terms address ductwork protection, the specific level and manner of required protection are not specified. Defendants indicate that McKenney's needed to "prevent the accumulation of dust, debris and foreign material" and "[p]rotect open ducting from construction dust and debris in a manner approved by the Contracting Officer." Defs.' Mem. (ECF No. 117, at 11-13). However, the subcontract does not explicitly reference plastic sheeting, see Pl.'s Opp'n (ECF No. 123, at 20), and there are plausible alternatives for complying without plastic sheeting applied at the point of manufacture.

The parties also dispute whether Leebcor's IAQ was fully incorporated into the subcontract. The subcontract specifies that McKenney's "shall comply with the following IAQ performance [r]equirements," listing three specific IAQ provisions. Compl. Ex. B (ECF No. 1-2, at 13-14). However, the incorporated

provisions do not include the IAQ's "plastic sheeting" provision, which appears in another unincorporated provision.  Defs.' Mem. Ex. 10 (ECF No. 117-11, at 4).  Leebcor argues that "[t]he IAQ was properly incorporated," Defs.' Reply (ECF No. 135, at 9), but McKenney's relies on the <u>expression unius</u> canon of interpretation to dispute such incorporation, Pl.'s Opp'n (ECF No. 123, at 11). I agree with McKenney's that the subcontracts' express incorporation of three provisions of the IAQ – omitting any reference to plastic sheeting - means a reasonable juror could conclude that the IAQ's plastic sheeting requirement did not apply to McKenney's work.  In light of the material factual disputes outlined above, I find that Leebcor has not met its burden on summary judgment, and recommend the court deny its motion on the change order for ductwork sealing.

C.   <u>McKenney's Motion for Partial Summary Judgment</u>

  1.   **Reasonable jurors could conclude that payment to McKenney's is not "due" and the offset provisions of Article 5 do not apply.**

With regard to McKenney's Motion for Partial Summary Judgment, the company argues that the language of Article 5 in the subcontract unambiguously precludes Leebcor withholding the balance due on the original subcontract amount because its claim that McKenney's delayed performance caused Leebcor damages is subject to a "reasonable dispute."  McKenney's briefing cites deposition testimony purporting to establish that the only reason

the subcontract balance has not been paid is Leebcor's belief that it is entitled to damages for McKenney's delay. Pl.'s Reply Ex. 3 (ECF No. 130-3, ¶ 19). But in order to obtain summary judgment, McKenney's bears the burden to first demonstrate that the language of Article 5 applies. As Leebcor points out, that offset provision only applies if the payments offset are "owed by" Leebcor. Defs.' Opp'n (ECF No. 128, at 16). In this case, because reasonable jurors could conclude that McKenney's breached its subcontract, McKenney's cannot establish as a matter of law that the sums withheld are "payments owed by" Leebcor under the subcontract.

As Leebcor's supplemental allegations establish, several provisions of the subcontract provide that payment to McKenney's is contingent on its performance in accordance with the terms of the contract. Id. at 10 (citing Subcontract Art. 12, Art. 6 (ECF No. 1-2, at 3,4)). This includes the "[t]ime is of the essence" provisions as well as the requirement that Leebcor finally accept all work. Id. at 3 (citing Subcontract Art. 5 (ECF No. 1-2, at 2)). To be sure, McKenney's has a strong factual claim that any performance delay did not cause Leebcor financial harm and thus would not be a basis for withholding final payment. But the Article 5 offset provision anticipates a prohibition only on offsetting payments which are undisputedly "owed by" Leebcor against claims which may be subject to dispute. Here, Leebcor's payment withholding is not an offset within the meaning of Article

5 because Leebcor does not concede (and the undisputed facts do not establish) that it owes any specific subcontract balance. As a result, Leebcor is not offsetting the withholding against a disputed claim but merely asserting its rights under the other the subcontract provisions not to pay as a result of McKenney's alleged breach.

Construing Article 5 as McKenney's alleges would nullify several other contractual provisions Leebcor relies upon and negate Leebcor's ability to withhold payment for nonconforming work or delay. In fact, the redline version of the Agreement makes clear that the offset provision's original purpose was to allow Leebcor to offset money it concededly owed on this Project, against money which might be due on other projects with the same subcontractor. McKenney's requested changes to that language completely changed its meaning, but they did not preclude Leebcor from raising other contractual defenses to payment or contesting the application of Article 5 on this basis.

For similar reasons, McKenney's claim that the Prompt Payment Act precludes these contractual defenses also fails. The implementing regulations upon which McKenney's relies state:

> i.  Prime-subcontractor disputes. A dispute between the Contractor and subcontractor relating to the amount or entitlement of a subcontractor to a payment or a late payment interest penalty under a clause included in the subcontract pursuant to paragraph (c) of this clause does not constitute a dispute to which the Government is a party. The Government may

not be interpleaded in any judicial or
administrative proceeding involving such a dispute.

j.  Preservation of prime-subcontractor rights.  Except
as provided in paragraph (i) of this clause, this
clause shall not limit or impair any contractual,
administrative, or judicial remedies otherwise
available to the Contractor or a subcontractor in
the event of a dispute involving late payment or
nonpayment by the Contractor or deficient
subcontract performance or nonperformance by a
subcontractor.

48 C.F.R. § 52.232-27(i)-(j); see also 31 U.S.C. § 3905(i)-(j).

These provisions prescribe requirements for contracts awarded
by federal agencies, and benefits provided to subcontractors
working on federal projects, but "'courts have consistently held
that the [Federal Prompt Payment Act] does not confer a private
right of action upon subcontractors.'"  United States ex rel.
Hendrickson Mech. Svcs. V. Tyler Const. Corp., Inc., No. 14cv778,
2016 WL 5716354, at *5 (E.D.N.C. Sept. 30, 2016)[6]; see also United
States ex rel. Va. Beach Mech. Svcs., Inc. v. SAMCO Const. Co., 39
F. Supp. 2d 661, 678 (E.D. Va. 1999).

As Leebcor argues, it is not offsetting amounts admittedly
due to McKenney's.  Instead, it seeks to enforce its right to
insist on performance in accordance with the contract terms and to
deny compensation for deficient subcontractor performance.  In

---

[6] (quoting United States v. Hartford Accident & Indem. Co., 168 F. Supp. 3d 824,
837 n.19 (D. Md. 2016)) (alterations in original).

this case, disputes of material fact preclude the court from entering judgment on McKenney's claim notwithstanding its factual position that Leebcor was not damaged by any delay.

Relying on its expert reports and deposition testimony, Leebcor has established disputes of material fact regarding McKenney's timely performance and resulting costs. Def.'s Reply (ECF No. 128, at 15) (citing Def.'s Reply Ex. 4 (ECF No. 128-4) (expert report of Richmond Nolli)). The company contends that unpaid sums on McKenney's final invoices are not being "withheld" but are simply not due as a result of these alleged breaches. See Defs.' Reply (ECF No. 128, at 16). Nothing in the Prompt Payment Act or the parties' subcontract precludes Leebcor from raising these defenses. Accordingly, the court should deny McKenney's Motion for Partial Summary Judgment.

## V.   RECOMMENDATION

For the foregoing reasons, this Report recommends that the district court DENY all three motions seeking summary judgment (ECF Nos. 108, 116, 118).

## VI.   REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.   Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing

of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure.   A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2.   A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations.   Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER,
UNITED STATES MAGISTRATE JUDGE

September 20, 2021