UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

UNITED STATES OF AMERICA,
FOR THE USE AND BENEFIT OF
MCKENNEY'S, INC.

                    Plaintiff,

          v.                               CIVIL ACTION NO. 4:20cv179

LEEBCOR SERVICES, LLC
and
THE CINCINNATI INS. Co.,

                    Defendants.

## MEMORANDUM ORDER

This matter comes before the court on three partially dispositive Motions for Summary Judgment ("Motions") filed by McKenney's, Inc. ("Plaintiff"), Leebcor Services, LLC ("Leebcor"), and The Cincinnati Insurance Company ("Cincinnati") (Leebcor and Cincinnati, collectively, "Defendants"). ECF Nos. 108, 116, 118. For the reasons explained below, the court **ADOPTS AND APPROVES IN FULL** the findings and recommendations set forth in the Magistrate Judge's thorough and well-reasoned Report and Recommendation, ECF No. 173 (R&R), as supplemented by this Memorandum Order, **OVERRULES** Defendants' Objections, ECF Nos. 175, 176 ("Objections"), and **DENIES** the Motions.

## I. PROCEDURAL HISTORY

Plaintiff filed its Complaint on May 8, 2020. ECF No. 1. On June 25, 2021, Plaintiff filed a Partial Motion for Summary Judgment ("Plaintiff's Motion"). ECF No. 108. The same day, Defendants jointly filed their own Partial Motion for Summary Judgment, ECF No. 116 ("Joint Motion"), and Cincinnati individually filed a Partial Motion for Summary Judgment, ECF No. 118 ("Cincinnati's Motion"). Each of the Motions was fully briefed by the parties.

The court referred the Motions to United States Magistrate Judge Douglas E. Miller by Order entered July 22, 2021, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Civil Rule 72, to conduct hearings, including evidentiary hearings, if necessary, and to submit to the undersigned proposed findings of fact, if applicable, and recommendations for the disposition of the Motions. ECF No. 138. The Magistrate Judge filed a Report and Recommendation on September 20, 2021, explaining that disputes of material fact existed concerning all relevant claims, and recommending that the court deny the Motions. R&R at 1.

By copy of the Report and Recommendation of the Magistrate Judge, the parties were advised of their right to file written objections thereto. Id. at 34-35. On October 4, 2021, Defendants filed Objections to the portion of the Report and Recommendation

regarding their Partial Motions for Summary Judgment. ECF No. 175, 176 ("Objections"). Plaintiff filed a Memorandum in Opposition to Defendants' Objections on October 18, 2021, ECF No. 177, but did not object to the Magistrate Judge's ruling on its Motion. Defendants filed a "Motion for Leave to File Defendants' Reply to Objections to Magistrate Judge's Report and Recommendations" on October 27, 2021, ECF No. 182, which the court denied on December 8, 2021, ECF No. 189.

## II. LEGAL STANDARDS

### A. Review of Magistrate Judge's R&R

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, the court, having reviewed the record in its entirety, must make a _de novo_ determination of those portions of the R&R to which the parties have specifically objected. Fed. R. Civ. P. 72(b). For unchallenged portions, the court "must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" _Diamond v. Colonial Life & Accident Ins. Co._, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note). The court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1).

### B. Summary Judgment Standard

Summary judgment is appropriate when the court, viewing the record as a whole and in the light most favorable to the nonmoving party, finds there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Austin v. Clark Equip. Co., 48 F.3d 833, 835-36 (4th. Cir. 1995). "Thus, it is the burden of the moving party to show the court that no material factual issues exist for trial." Id. at 835.

If the moving party carries its burden, the court should grant summary judgment if the nonmoving party has failed to establish, after adequate time for discovery, the existence of an essential element of that party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). At a minimum, the nonmoving party must present "evidence on which the [trier of fact] could reasonably find" for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). The nonmoving party must go beyond the facts alleged in the pleadings, and rely instead on affidavits, depositions, or other evidence to show a genuine issue for trial. See Celotex, 477 U.S. at 324; M & M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc., 981 F.2d 160, 163 (4th Cir. 1992).

"When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir.

2003) (quoting <u>Philip Morris Inc. v. Harshbarger</u>, 122 F.3d 58, 62 n.4 (1st Cir. 1997)).

### III. OBJECTIONS

The court will briefly review some of the facts key to understanding Defendants' Objections and the court's analysis.[1] This dispute centers around a barracks-renovation project at Fort Benning, Georgia (the "Project"). R&R at 3. In 2016, Leebcor entered into an agreement (the "Prime Contract") with the United States Army Corps of Engineers ("USACE") to complete the Project. To comply with the requirements of the Miller Act, 40 U.S.C. § 3131, <u>et. seq.</u>, Leebcor secured its payment obligations on the Project with a payment bond from Cincinnati in the amount of $36,800,206. R&R at 3; ECF No. 1-1.

Plaintiff and Leebcor then entered into a Subcontract on June 22, 2017, under which Plaintiff agreed to complete the plumbing, HVAC, and direct digital controls ("DDC") systems requirements for the Project. R&R at 3; ECF No. 1-2 at 11. The parties' three Motions concern five issues that turn on interpretations of the Subcontract and the Miller Act.

---

[1] The court **ADOPTS** in full the Magistrate Judge's recommended findings of fact, as supplemented by this Memorandum Order, and need not repeat his thorough recitation of the relevant factual background here. <u>See</u> R&R at 3-10.

## A. Plaintiff's Motion (ECF No. 108)

Thus far, Plaintiff has received $9,943,622 from Leebcor pursuant to the Subcontract. R&R at 9. In its Motion, Plaintiff argues that it is entitled to payment of an additional $220,347.50, plus interest, which it claims represents the remaining Subcontract balance. ECF No. 108 at 2. The Magistrate Judge recommended that the court deny Plaintiff's Motion "because reasonable jurors could conclude that [Plaintiff] breached its subcontract," and therefore Plaintiff "cannot establish as a matter of law that the sums withheld are 'payments owed by' Leebcor under the subcontract." R&R at 31.

Plaintiff did not object to this recommendation and the court does not find any clear error on the face of the record. Accordingly, the court **ADOPTS** and **APPROVES** the Magistrate Judge's conclusion that Plaintiff is not entitled to summary judgment on this issue.

## B. Defendants' Joint Motion (ECF No. 116)

In their Joint Motion, ECF No. 116, Defendants argue that they are entitled to summary judgment on two issues. First, they contend that Plaintiff's "claim for damages from the Government-caused delay at the outset of the project is barred by clear [Subcontract] language that binds [Plaintiff] to any decision that the Government makes on this issue." ECF No. 117 at 1. Second, they argue that Plaintiff's "claim for compensation

for allegedly out-of-scope work to protect its own ductwork fails because that work is clearly within the scope of the project." Id. Magistrate Judge Miller recommended that the court deny Defendants' Joint Motion in its entirety. R&R at 25.

### 1. Delay Damages

Defendants argue that Plaintiff's claim for damages relating to the initial delay of work on the Project ("Initial Delay") should be denied as a matter of law, explaining that Plaintiff is "bound by the Government's decision to cover only a small portion of the asserted costs for the Initial Delay." ECF No. 117 at 13. Judge Miller recommended denying summary judgment as to this issue, reasoning that a genuine issue of fact existed for trial because a "reasonable juror could conclude that [Plaintiff] is not bound by the Government's decision to approve only part of the Initial Delay damages because Leebcor can still appeal the Modification under the [Contract Disputes Act, 41 U.S.C. §§ 7101-7109]." R&R at 25.

Defendants objected, arguing that the Magistrate Judge erred in concluding that disputed factual issues prevented granting summary judgment. ECF No. 176 at 12. The relevant Subcontract provision explains as follows:

> If a decision relating to the Prime Contract is made by the [USACE] and such decision is also related to [the Subcontract], said decision, if binding upon [Leebcor] under the Prime Contract, shall in turn be binding upon [Plaintiff] with respect to such matter if [Plaintiff]

> is allowed to provide any required or supporting
> documentation in the basis of [the USACE's] decision. If
> [Leebcor] elects to appeal any such decision of the
> [USACE], [Leebcor] agrees to promptly furnish
> [Plaintiff] with a copy of such appeal. Any decision
> upon appeal of such matter, if binding upon [Leebcor],
> shall in turn be binding upon [Plaintiff]. Pending the
> making of any decision, either by the [USACE] or on
> appeal, [Plaintiff] shall proceed diligently with
> performance of [the Subcontract].

ECF No. 1-2 at 5 (Art. 14).

Under this provision Plaintiff is only bound by USACE decisions that satisfy three requirements: (1) the decision must relate to both the Prime Contract and the Subcontract; (2) Plaintiff must have been "allowed to provide any required or supporting documentation in the basis of [the USACE's] decision"; and (3) the decision must be "binding upon [Leebcor] under the Prime Contract." The court agrees with Judge Miller's conclusion that a material factual issue concerning the third requirement remains. R&R at 26-27.

A reasonable juror could find that the USACE's decision concerning Initial Delay damages is not "binding upon" Leebcor because Leebcor retains the ability to appeal the decision and seek additional compensation from the government for the Initial Delay. See id. As this issue alone precludes summary judgment, the court agrees that "it is unnecessary to discuss the sufficiency of [Plaintiff's] documentation under Article 14, or the conditions of

the Government's partial approval." R&R at 28.[2]

Accordingly, the court **ADOPTS** and **APPROVES** the Magistrate Judge's conclusion that a genuine dispute of material fact exists concerning whether the USACE's Initial Delay damages decision is "binding upon" Leebcor.

### 2. Ductwork Protection

Plaintiff seeks compensation for "additional cleaning and wrapping of ductwork during delivery and installation," which was purportedly beyond the scope of the Subcontract requirements. See ECF No. 1 ¶ 56-57. This claim stems from Leebcor's refusal to pay Plaintiff the $22,973 Plaintiff represents it incurred following Leebcor's instructions to "clean the ductwork that had been delivered to the jobsite" and "wrap the ends of the ductwork in blue plastic to protect the remaining duct during delivery to the jobsite." ECF No. 70-2 at 7-8. Defendants move for summary judgment on this issue, arguing that "this activity was explicitly part of [Plaintiff's] scope of work." ECF No. 117 at 19.

Judge Miller concluded that reasonable jurors could find that protecting the ductwork in the manner prescribed by Leebcor fell outside the original Subcontract scope, and therefore constituted

---

[2] Defendants contest Judge Miller's purported "holding[s]" concerning these two issues. ECF No. 176 at 12-13. However, Judge Miller did not recommend, and the court does not address, whether material factual disputes concerning these matters preclude summary judgment. R&R at 28.

compensable additional work. R&R at 28-30. He explained that while "the contract terms address ductwork protection, the specific level and manner of required protection are not specified." Id. at 29. Defendants object, pointing to Subcontract provisions, the Project specifications, and the LEED Silver standard to support their Motion. ECF No. 176 at 13-19.

The court agrees with Judge Miller's reasoning and ultimate conclusion. See R&R at 28-30. Reasonable jurors could conclude that no Subcontract language, or language explicitly incorporated into the Subcontract, required Plaintiff to wrap duct before it was transported to the jobsite. The court supplements the Magistrate Judge's reasoning by discussing three of the provisions that Defendants rely on.

### i. Indoor Air Quality Management Plan Provisions

Plaintiffs initially relied on provisions of the Indoor Air Quality Management Plan ("IAQ") to support their Motion. ECF No. 117 ¶ 30. Though a provision of the IAQ requires that "[a]ll ductwork arriving on site . . . be sealed with plastic sheeting," a reasonable juror could find that this provision was not incorporated into the Subcontract. ECF No. 123-1 at 4.

The Subcontract includes a section entitled "Construction Indoor Air Quality (IAQ) Management," which uses the following language to introduce a list of steps that Plaintiff was required to take to protect the ductwork during construction: "[Plaintiff]

10

shall comply with the following IAQ performance Requirements
. . . ." ECF No. 1-2 at 13-14. None of the three listed
requirements, however, obligated Plaintiff to use plastic sheeting
to accomplish the listed air-quality objectives. Id. Pursuant to
the expresio unius canon, the court agrees that the "express
incorporation of three provisions of the IAQ - omitting any
reference to plastic sheeting - means a reasonable juror could
conclude that the IAQ's plastic sheeting requirement did not apply
to [Plaintiff's] work." Id. at 30.

### ii. Contracting Officer Approval Provision

Plaintiffs also rely on the Project specification
incorporated into the Subcontract requiring Plaintiff to
"[p]rotect open ducting from construction dust and debris in a
manner approved by the Contracting Officer." ECF No. 176 at 14
(referencing ECF No. 117-10 at 39 (§ 23 31 13.00 40 (3.2.2.1))).
However, this provision does not unambiguously give the
Contracting Officer discretion to direct how duct must be
transported to the Project site. The provision is within the
"Installation," rather than the "Preparation" subsection of the
Project specifications concerning ductwork, references protection
from "construction dust and debris," and is preceded by
instructions for assembling the components of the Project's
ductwork. ECF No. 117-10 at 38-39; see also ECF No. 174 at 55
(Plaintiff's counsel's argument that "the overall quality

requirements address protection of the ductwork, protection of all the equipment at the site, not from the fab shop to the site"). Accordingly, a juror could reasonably interpret this language to authorize the Contracting Officer to direct how ductwork must be maintained once on site, but not how the supplier must transport it from the fabricator.

However, even construing this provision to grant such authority, the court agrees that a reasonable juror could still find that "there are plausible alternatives for complying without plastic sheeting applied at the point of manufacture." R&R at 29. Indeed, the relevant provision's inclusion of the phrase "a manner" rather than "the manner" illustrates that Plaintiff could comply by using one of several duct-protection methods. In support of an alternative reading, Defendants submitted an email sent by Reid Wolfe, a Leebcor representative, to Plaintiff's employees. In it, Mr. Wolfe explains that following a walk-through of the Project, the Contracting Officer Representative ("COR") "stated" that "[t]he ductwork needs to be clean and sealed from the time it leaves the fabrication shop until installation." ECF No. 117-12 at 2; see also ECF No. 174 at 53-54 (Defendants' counsel's argument that the contracting officer required duct to be sealed before transportation).

Nevertheless, this statement is insufficient at the summary judgment stage to establish definitively that sealing the ductwork

with plastic prior to transport was the <u>only</u> way to "[p]rotect open ducting from construction dust and debris in a manner approved by the Contracting Officer." ECF No. 117-10 (§ 23 31 13.00 40 (3.2.2.1)). The court recognizes that there is "'great flexibility with regard to the evidence that may be used on a [summary judgment] proceeding,'" and that the court "<u>may</u> consider . . . the content or substance of otherwise inadmissible materials where 'the party submitting the evidence show[s] that it will be possible to put the information into an admissible form.'" <u>Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.</u>, 790 F.3d 532, 538 (4th Cir. 2015) (emphasis added) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal Practice and Procedure</u> § 2721 (3d ed. 1998); 11 James W. Moore et al., <u>Moore's Federal Practice</u> § 56.91[2] (3d ed. 2015)).

Here, however, Mr. Wolfe's explanation of the COR's statement is hearsay and Defendants have not represented how they might offer it in an admissible form at trial. <u>See generally</u> Fed. Rs. Evid. 801, 802. Defendants have not filed an affidavit documenting the COR's statement, and the court is unwilling to speculate as to how this statement could or would be presented. Accordingly, the court will not rely on the hearsay statement contained in the email to grant summary judgment.

13

### iii. LEED Silver Standard

Finally, Defendants point to the LEED Silver standard to support their position that Plaintiff was required to wrap the ends of duct prior to transport. See ECF No. 176 at 14-15. The court agrees that the Subcontract required Plaintiff to "furnish all material, labor, equipment, insurances, documentation, and incidentals necessary to meet LEED **SILVER** equivalency for [its] scope of work." ECF No. 1-2 at 13 (¶ 14). However, it is not clear that the LEED standard required Plaintiff to transport duct in the manner Defendants claim it did.

In support of their position, Defendants refer the court to a chart Plaintiff shared before executing the Subcontract. ECF No. 176 at 14 (citing ECF No. 176-2). The chart outlines which "Duct Cleaning & Protection" activities are required to comply with three standards: "Minimum," "LEED," and "Hospital Grade." ECF No. 176-2 at 3. Activities pertinent to each of the three standards are "checked" beneath the relevant standard. Id. "Duct ends will be shrink-wrapped for transportation and storage prior to installation" is listed as an activity but is not "checked" under any of the three standards. Id. The chart, therefore, does not support Defendant's contention that sealing duct ends prior to transport was a required aspect of the LEED standards incorporated into the Subcontract. See ECF No. 176 at 14-15 (arguing that the

14

chart illustrates that this requirement was a part of "the standards for LEED projects").

For the foregoing reasons, and for the reasons stated in the Report and Recommendation, the court **ADOPTS** and **APPROVES** the Magistrate Judge's conclusion that Defendants are not entitled to summary judgment on Plaintiff's claim for additional compensation for their ductwork protection.

### C. Cincinnati's Motion (ECF No. 118)

Cincinnati argues that it is entitled to summary judgment on two issues. First, Cincinnati argues that Plaintiff's Miller Act claim is "barred by the Miller Act's one-year statute of limitations . . . ." ECF No. 119 at 1. Second, Cincinnati contends that it "is entitled to summary judgment on [Plaintiff's Miller Act] claim to the extent that [Plaintiff] seeks damages not permitted by the Miller Act." Id. Judge Miller recommended denying the Motion in its entirety. ECF No. 173 at 13.

### 1. Statute of Limitations

Miller Act actions "must be brought no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action." 40 U.S.C. § 3133(b)(4). Cincinnati argues that it is entitled to summary judgment on Plaintiff's Miller Act claim because the claim is barred by this statute of limitations. ECF No. 119 at 5. Magistrate Judge Miller recommended denying summary judgment on

15

this issue, concluding that "the record contains sufficient evidence for a reasonable juror to conclude that McKenney's provided base subcontract work after May 8, 2019, and thus timely filed its Miller Act claim against Cincinnati." ECF No. 173 at 13.

Defendants' Objections do not mention, much less identify any error in, Judge Miller's recommendations concerning the statute-of-limitations issue. See ECF No. 176. Objections "must be made 'with sufficient specificity so as reasonably to alert the district court of the true ground of the objection.'" Scott v. Virginia Port Authority, No. 2:17-cv-176, 2018 WL 1508592, at *2 (E.D. Va. Mar. 27, 2018) (Jackson, J.) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)). "Objections must also respond to specific errors in the report and recommendation because general or conclusory objections are not proper. General or conclusory objections are the equivalent of a waiver" Id. (internal citation omitted) (citing Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982)). If any other rule applied, "judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined." See Midgette, 478 F.3d at 622.

Because Defendant did not mention the issue in its Objections, it failed to properly object to any aspect of Judge Miller's recommendation concerning Cincinnati's statute-of-limitations argument. The court finds no error on the face of the record, and

16

therefore **ADOPTS** and **APPROVES** the Magistrate Judge's conclusion that Plaintiff is not entitled to summary judgment on this issue.

### 2. Damages Not Recoverable Under the Miller Act

Before the United States may award a contract subject to the Miller Act, the prime contractor generally must obtain a payment bond in an amount equal to "the total amount payable by the terms of the contract . . . ." 40 U.S.C. § 3131(b)(2). Contractors who have "furnished labor or material in carrying out work provided for in a contract [subject to the Miller Act] . . . may bring a civil action on the payment bond for the amount unpaid . . . ." 40 U.S.C. § 3133(b)(1). This provides an "alternative remedy" for such contractors who ordinarily could obtain a mechanic's lien against the private property they have improved. See F.D. Rich Co., v. United States ex rel. Indus. Lumber Co., 417 U.S. 116, 121-22 (1974). Given its remedial purpose, the Miller Act "is to be given a liberal construction 'in order properly to effectuate the Congressional intent to protect those whose labor and materials go into public projects.'" United States ex rel. Sunbelt Pipe Corp v. U.S. Fid. & Guar. Co., 785 F.2d 468, 470 (4th Cir. 1986) (quoting Clifford F. MacEvoy Co. v. United States ex rel. Calvin Tompkins Co., 322 U.S. 102, 107 (1944)).

Nevertheless, a subcontractor's potential recovery against a payment bond surety is not necessarily coextensive with what he may recover from the general contractor. If "a subcontractor fully

17

performs its contractual obligations, but the prime contractor
fails or refuses to pay the subcontractor," the surety must "'pay
the compensation to which the parties have agreed, although this
amount exceeds the cost of labor, materials, and overhead.'" United
States ex rel. E. Waterproofing & Restoration Co. v. Berkley Reg'l
Ins. Co., 986 F. Supp. 2d 660 (D. Md. 2013) (quoting United States
ex rel. Woodington Elec. Co., v. United Pac. Ins. Co., 545 F.2d
1381, 1383 (4th Cir. 1976)). However, "when a prime contractor
breaches or terminates a subcontract, the subcontractor cannot
recover expectation damages from the Miller Act surety." Berkley,
986 F. Supp. 2d 665. In other words, the subcontractor may recover
the entire subcontract price for work actually performed, but may
not recover for work that it was to perform, but did not actually
complete due to the prime contractor's breach.

Similarly, subcontractors may recover from a surety for
damages related to project delays, but only "for additional or
increased costs actually expended in furnishing the labor or
material in the prosecution of the work provided for in the
contract and attributable to the delay." United States ex rel.
T.M.S. Mech. Contractors, Inc. v. Millers Mut. Fire Ins. Co. of
Tex., 942 F.2d 946, 952 (5th Cir. 1991). Thus, the surety's
liability is limited "to the subcontractor's 'out-of-pocket costs
of delay.'" Id. (quoting United States ex rel. Pertun Constr. Co.
v. Harvesters Group, Inc., 918 F.2d 915, 918 (11th Cir. 1990)).

18

"Generally, the word 'labor' in the Miller Act includes 'physical toil, but not work by a professional, such as an architect or engineer.'" United States ex rel. Constructors, Inc. v. Gulf Ins. Co. , 313 F. Supp. 2d 593, 597 (E.D. Va. 2004) (Smith, J.) (quoting United States ex rel. Naberhaus-Burke, Inc. v. Butt & Head, Inc., 535 F. Supp. 1155, 1158 (S.D. Ohio 1982)). However, "skilled professional work which involves actual superintending, supervision, or inspection at the job site" is covered. Id. (quoting Naberhaus-Burke, 535 F. Supp. at 1160).

The Miller Act's definition of "material" includes "things which will be incorporated in the project itself," as well as "expendable and other things reasonably expected to be consumed, or substantially consumed, in the performance of the work." Sunbelt Pipe Corp., 785 F.2d at 470. However, "[a] thing which may reasonably be expected to be removed by the contractor and used in subsequent jobs is a part of the contractor's capital equipment," and does not qualify. Id.

Plaintiff asserts a Miller Act claim against Cincinnati pursuant to Leebcor's payment bond, seeking "at least $562,884" in amounts owed for labor and material furnished to complete the Project. ECF No. 1 ¶¶ 73-78. This is the same amount Plaintiff seeks from Leebcor for its alleged breaches of the Subcontract. Id. ¶ 72. Cincinnati argues that it is "entitled to summary judgment as to Plaintiff's damages other than for materials and

labor," which it claims are "embedded in all of [Plaintiff's] claims." ECF No. 119 at 16-17. In support of its Motion, Cincinnati cites to portions of Plaintiff's expert's report, taking issue with the expert's calculation of damages "based on a series of alleged costs, including overhead, lost profits, tool rentals, salaried employees, and more." Id.

The Magistrate Judge recommended denying summary judgment on this issue, concluding that "Cincinnati [did] not identif[y] specific components of [Plaintiff's] damages that are conclusively outside the Miller Act." R&R at 21. He explained that Cincinnati "failed to identify [Plaintiff's] allegedly unrecoverable damages with sufficient particularity," and that a reasonable juror could find that Plaintiff can recover at least some of the costs included in each broad category Cincinnati identifies. Id. at 23-24. Defendants object, arguing that Cincinnati adequately identified categories of impermissible damages that Plaintiff asserts, and that "[t]he specific amounts for these impermissible charges . . . are identified in detail in [Plaintiff's] expert report." ECF No. 176 at 20-21.

The court agrees with Judge Miller's findings. Cincinnati argues that summary judgment is proper because Plaintiff's damages calculation for the Initial Delay, other delays, out-of-scope work, and outstanding invoices incorporate costs which are not recoverable under the Miller Act. ECF No. 119 at 16. However,

Cincinnati does not specify which costs within each of these categories a reasonable juror <u>must</u> find exceed the "amount unpaid," and are therefore beyond the Miller Act's scope. 40 U.S.C. § 3133(b)(1). Accordingly, it is the court's duty to assess whether Cincinnati has shown "that there is no genuine dispute as to any material fact and [Cincinnati] is entitled to judgment as a matter of law" as to the entirety of each category identified. Fed. R. Civ. P. 56(a). Yet, Defendants concede that the allegedly impermissible costs only constitute a "substantial portion" of the damages Plaintiff seeks from Cincinnati. ECF No. 176 at 21. Therefore, summary judgment as to these categories is not warranted.

Even so, according to Defendants, "summary judgment is appropriate to bar categories of damages that plaintiffs inappropriately assert," and the court should declare "as a matter of law, certain categories of damages asserted by [Plaintiff] are unavailable under the Miller Act." <u>Id.</u> at 21-23. The court agrees, as a general matter, that summary judgment as to a particular category of damages can be warranted. However, whether a movant seeks summary judgment as to a "claim," "category of damages," or some other aspect of a claim or defense, it still must satisfy the Rule 56 standard as to an identifiable issue. As explained above, to resolve the issues Cincinnati identified in its Motion, a fact finder must dissociate the claims and determine which damages in

each category fall outside the scope of the Miller Act, rendering summary judgment as to any of the categories improper.

For these reasons, and for the reasons stated in the Report and Recommendation, the court **ADOPTS** and **APPROVES** the Magistrate Judge's conclusion that Plaintiff is not entitled to summary judgment on this issue.

### IV. CONCLUSION

The court **ADOPTS AND APPROVES IN FULL** the findings and recommendations set forth in the Magistrate Judge's thorough and well-reasoned Report and Recommendation, ECF No. 173, filed on September 20, 2021, as supplemented by this Memorandum Order. Therefore, the court **OVERRULES** Defendants' Objections, ECF Nos. 175, 176, and **DENIES** all three Motions for Summary Judgment, ECF Nos. 108, 116, 118.

The Clerk is **DIRECTED** to send a copy of this Memorandum Order to counsel for all parties.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
Senior United States District Judge

REBECCA BEACH SMITH
SENIOR UNITED STATES DISTRICT JUDGE

January 12, 2022